# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

*In the Matter of the Search of*
(Name, address or brief description of person or property to be searched)

**SEARCH WARRANT**

21108 Southway Drive Macomb Township, Michigan

CASE NUMBER:

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF MiCHIGAN
BY:

TO: <u>Drug Enforcement Administration</u>   and any Authorized Officer of the United States

Affidavit(s) having been made before me by   <u>Brian Malagrida, Soecial Agent</u>   who has reason to believe

that __ on the person of or <u>X</u> on the preniises known as *(name, description and/or locarion)*

21108 Southway Drive, Macomb Township, Michigan, a red brick, single-family residence with an attached garage, the number "21108" above the garage, a brown front door and a tan garage door,

is now concealed a certain person or property, namely *(describe the person or property)*

   SEE ATTACHMENT A

Jam satisfied that the affidavits(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime - 6:00 a.m. to 10:00 p.m.)(at any time of the day or night) and **if** the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventOlY of the person or property seized and promptly return this warrant to the Honorable U. S. Magistrate Judge, as required by law.

OCT 26 2005          at      <u>Detroit. Michigan</u>

Date/Time Issued

                              *R. Steven Whalen*

<u>R. STEVEN WHALEN</u>
United States Magistrate Judge         *Signature oj Judic/ul Officer*

ATTACHMENT A

1. Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular, cocaine, marijuana, and other controlled substances;

2. Papers, tickets, notes, receipts, and other items relating to domestic and international travel;

3. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, and cashier's checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

4. Electronic equipment, such as computers, telex machines, facsimile machines, currency counting machines, telephone answering machines, and related manuals used to generate, transfer, count, record and/or store the information described in items 1, 2, 3 and 5 of this exhibit. Additionally, computer software, tapes and discs, audio tapes, and the contents therein, containing the information generated by the aforementioned electronic equipment;

5. United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds;

6. Photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, slides, in particular photographs of co-conspirators, of assets and/or controlled dangerous substances;

7. Address and/or telephone books, Rolodex indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists;

8. Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, but not limited to, utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys; and

9. Fireanns and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine-guns and other weapons, and any records or receipts pertaining to firearms and ammunition.

AVERN-ecmrt

# UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

In the Matter of the Search of
(Name, address or brid description of person or prop~~o b~rChed)

21108 South way Drve Macomb Township, Michigan

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 0 0·5 X· 7 41 _13

I, Brian Malagrida, Special Agent, being duly sworn

I am a(n) Special Agent and have reason to believe that on the pr~ty or premises known as (name, description and/or location):

21108 Southway Drive, Macomb Township, Michigan, a red br~k, single-family residence with an attached garage, the number "21108" above the garage, a brown front door and a tan garage door,

there is now concealed a certain person or property, namely (describe the person or property to be seized)

SEE ATTACHMENT "A"

which is (state one or more bases for search and seizure set fourth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence of the commission of a federal crime

concerning a violation of Title 21, United States Code, Section(s) 846

The facts to support a finding of Probable Cause are as follows:

See attached affidavit - continued on the attached sheet and made a part hereof.

Signature of Affiant
Brian Malagrida, Special Agent

Sworn to before me, and subscribed in my presence

October 26, 2005                at      Detroit, Michigan
Date

R. Steven Whalen

R. STEVEN WHALEN
United States Magistrate Judge           Signature of Judicial Officer

ATTACHMENT A

1. Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular, cocaine, marijuana, and other controlled substances;

2. Papers, tickets, notes, receipts, and other items relating to domestic and international travel;

3. Books, records, invoices, receipts, records o f real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, and cashier's checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

4. Electronic equipment, such as computers, telex machines, facsimile machines, currency counting machines, telephone answering machines, and related manuals used to generate, transfer, count, record and/or store the infornlation described in items 1, 2, 3 and 5 of this exhibit. Additionally, computer software, tapes and discs, audio tapes, and the contents therein, containing the infornlation generated by the aforementioned electronic equipment;

5. United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds;

6. Photographs, including still photos, negatives, video tapes, films, undeveloped film arid the contents therein, slides, in particular photographs of co-conspirators, of assets and/or controlled dangerous substances;

7. Address and/or telephone books, Rolodex indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists;

8. Indicia of occupancy, residency, rental and/or ownership ofthe premises described herein, including, but not limited to, utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys; and

9. Firearnls and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine-guns and other w'eapons, and any records or receipts pertaining to firearms and ammunition.

Brian Malagrida, being duly sworn states as follows:

Your Affiant is an "investigative or law enforcement offIcer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516, Title 18, United States Code. Your Affiant has been employed by the Drug Enforcement Administration ("DEA") since August of 2002. Prior to the Drug Enforcement Administration, your Affiant was employed as a Police Officer and Detective in Massachusetts for seven (7) years. During these times, your Affiant has participated in numerous investigations of unlawful drug distribution and has conducted or participated in surveillance, undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefings of informants, and reviews of taped conversations and drug records.

1. On the basis of your Affiant's training and experience as well as the training and experience of other law enforcement officers, he is aware:

    C. That drug traffickers maintain books, records, receipts, notes, ledgers, and other papers relating to the procurement, distribution, storage, transportation of controlled substances to include records showing the phone numbers of customers, the beeper numbers of customers, the amount of controlled substances "fronted" to various customers along with running totals of debts to customers. They frequently maintain receipts such as credit card billings, parking stubs, hotel reservations/records, airline tickets, gas receipts and various notes. Items used to package controlled substances are also frequently maintained by drug traffickers.

    D. That it is common for drug traffickers to conceal narcotics records, narcotics proceeds and other related items described above within their

residences, garages, safety deposit box (es), businesses and automobiles and also in a like manner with their criminal associates in order to conceal such items from law enforcement authorities;

C. That large-scale narcotics traffickers often purchase and/or title their assets in fictitious names, aliases, names of relatives, criminal associates or business entities to avoid detection of these assets by govermnent agencies. Even though these assets are in the names of persons other than the drug trafficker, the trafficker usually owns and continues to use these assets maintaining dominion and control over these assets;

D. That large-scale drug traffickers must maintain, on hand, large amounts of United States currency in order to maintain and finance their ongoing drug business;

E. That when drug traffickers amass large proceeds from the sales of drugs, the traffickers attempt to legitimize these profits. That to accomplish these goals, drug traffickers utilize legitimate businesses, domestic and foreign banks and/or financial institutions and their attendant services, securities, cashiers checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts;

F. That persons involved in drug trafficking conceal in their residences or businesses, caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, automobile titles and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money acquired from engaging in drug trafficking activities;

G. That drug traffickers commonly use electronic equipment to aid them in their drug trafficking activities. This equipment includes, but is not limited

   to digital display pagers, mobile telephones, clone cellular telephones, speed dialers, electronic telephone books, electronic date books, computers, computer memory disks, money counters, electronic surveillance equipment, eavesdropping equipment, police scanners, and portable communication devices;

2. Your Affiant submits this affidavit in support of an application for a documentary search warrant for the following residences:

   A. 2215 Drexel Street, Detroit, Michigan is a two-story single family residence with a gray roof, light green siding and a large wooden porch. The number 2215 appears on the front of the residence.

   B. 21108 Southway Drive, Macomb Township, Michigan is a red brick single family residence with an attached garage with the number 21108 above the garage. There is a brown front door and a tan garage door.

**OVERVIEW OF INVESTIGATION**

3. Since April 2004, Task Force Agent Michael Mims from the DEA Montgomery District Office (MDO) has been investigating a cocaine and marijuana distribution and money laundering organization that is responsible for the distribution of multi-kilogram quantities of cocaine and large quantities of marijuana in the Alabama and Michigan area. The information set forth in this affidavit is based upon my personal involvement in this investigation, and based upon information and reports provided by DEA Agents in Alabama.

4. On August 8, 2005, TF A Mims initiated a Title-III investigation on Clifton JOHNSON. The intercepted conversations and other evidence in this investigation establishes that JOHNSON is an individual responsible for the distribution of multi-kilogram quantities of cocaine and large quantities of marijuana in the

Alabama area. TF A Mims intercepted phone conversations between JOHNSON and Oemetrious PEGUES, who has been identitled as a drug distributor and money launderer residing in Michigan. The evidence supporting this conclusion and collected to date, which will be detailed elsewhere in this affidavit, includes the seizure of narcotics, confidential informant statements. surveillance, and court authorized interceptions. This evidence establishes probable cause to believe that these individuals and their associates have been engaged in drug trafficking and money laundering activities. There is probable cause to believe that these individuals are using the locations identified in this affidavit to facilitate these offenses, and these locations are designed or intended to be used for use committing and concealing such offenses.

**FACTUAL BASIS FOR WARRANT**

5. In May of 2004, Central Alabama Drug Task Force Agent Jeff Moore received information from a confidential source that Oemetrious CAMMON, also known as Demetrious PEGUES, was distributing ounce quantities of cocaine to several individuals in Alabama. The confidential source, hereafter referred to as DEA-l, who has been proven reliable and credible through independent investigations, advised Agents that beginning approximately six (6) years ago DEA-l was purchasing cocaine from Demetrious PEGUES. OEA-l stated that PEGUES would sell OEA-l a half ounce to one ounce of cocaine at a time. DEA-l also stated that PEGUES would bring multiple kilograms of cocaine and pounds of marijuana to a residence on County Road 59 near Verbena, Alabama. According to DEA-l, this was the residence of PEGUES. OEA-l stated that OEA-l would help PEGUES break up the marijuana into pound quantities and cook the cocaine into crack cocaine. DEA-l stated he/she stopped purchasing cocaine from PEGUES because PEGUES was arrested in Louisiana and Texas. This will be discussed later in this affidavit.

6. In July of 2004, TFA Mims from the MOO received information from a

confidential source that Demetrious PEGUES was supplying cocaine to numerous individuals in Alabama. The confidential source, hereafter referred to as DEA-2, who has been proven reliable and credible through independent investigations, advised TFA Mims that approximately five (5) years ago, DEA-2 personally observed PEGUES make deliveries of ¼ kilogram and ½ kilogram amounts of cocaine to several individuals in the Clanton County, Alabama area.

7. In June of 2005, TF A Mims received information from a confidential source that Demetrious PEGUES was supplying cocaine to numerous individuals in Alabama. The confidential source, hereafter referred to as DEA-3, who has been proven reliable and credible through independent investigations, advised Agents that beginning approximately six (6) years ago DEA-3 was purchasing cocaine from Demetrious PEGUES. DEA-3 stated that PEGUES would sell DEA-3 five (5) to nine (9) ounces of crack cocaine every two to three days. DEA-3 stated he/she stopped purchasing cocaine from PEGUES in November of 2000, because DEA-3 was incarcerated. DEA-3 advised TFA Mims that PEGUES is now residing in Detroit, Michigan and PEGUES had recently purchased two (2) houses in the Detroit area, one for PEGUES and one for PEGUES' mother.

8. On August 15, 2005, the Honorable Judge W. Harold Albritton from the Middle District of Alabama issued a court interception order allowing Agents to intercept conversations on the MDO target phone (205)415-0108 and (205)587-2504, which was being utilized by Clifton JOHNSON. During the period of 08/15/2005 through 10/18/2005, MDO Agents intercepted hundreds of drug-related conversations on the target phone (205)415-0108 and (205)587-2504. As a result of this Title-III investigation and surveillance that was conducted by Agents, JOHNSON and Charles CRAIG, a known drug associate of JOHNSON, were observed traveling from Alabama to Detroit, Michigan to meet PEGUES at 2215 Drexel Street, Detroit, Michigan (target location 1) and 21108 Southway Drive, Macomb Township, Michigan (target location 2).

9. On August 24, 2005, at approximately 6:52 PM, Agents in MDO intercepted a phone conversation between JOHNSON utilizing telephone number, (205)4150108 and PEGUES utilizing the telephone number (313)487-8730. During this conversation, JOHNSON explains to PEGUES that JOHNSON was arrested with a small quantity of marijuana. (TFA Mims confirmed that \vithin two (2) weeks of this phone call, The United States Border Patrol seized approximately 3.5 pounds of marijuana from JOHNSON in Sierra Blanca, Texas.) During this conversation, JOHNSON also explains to PEGUES that he (JOHNSON) was going to send PEGUES "one". Based on the context of the intercepted call, your Affiant, as well as TF A Mims, believes that JOHNSON was going to send PEGUES a quantity of marijuana before being arrested by the U.S. Border Patrol. During this same conversation, JOHNSON asks PEGUES if JOHNSON can get money from PEGUES. JOHNSON stated, "I been calling you man, I need some money man, and Charles hurting too, cause I had gave, I had to give that mother fucker about three grand. You know you owe me twenty- five but I gave him another thousand." PEGUES indicated that he will give JOHNSON and Charles CRAIG money. PEGUES tells JOHNSON that they need to "Chill" a while. Agents are familiar with the term "Chill" being used as a code for suspending illegal activities. Your Affiant, as well as TF A Mims believes that PEGUES wants to suspend operations to prevent their operation being detected by law enforcement. PEGUES goes on to state that they should suspend their operation for a year. This indicates that the operation is so profitable that PEGUES and JOHNSON can afford to stop their income for one year and not be affected. JOHNSON tells PEGUES that JOHNSON and CRAIG were considering traveling to Detroit. JOHNSON stated, "But me and old Charles was gonna come there this weekend man, cause we needing some cash man." PEGUES tells JOHNSON that PEGUES needs to talk to JOHNSON face to face. PEGUES tells JOHNSON to bring CRAIG and come to Detroit this weekend. Based on these intercepted calls and other evidence discussed in this investigation, the Affiant believes that until his recent incarceration PEGUES was operating a substantial drug trafficking operation in the Detroit Metropolitan Area.

10. On August 27, 2005, as a result of intercepted conversation, the MDO Agents learned that JOHNSON and CRAIG were traveling to Detroit, Michigan to meet PEGUES to pick up drug-related proceeds. At approximately 7:40 AM, Agents from the Detroit Field Division (DFD) assisted the MDO with surveillance of a Chevrolet Truck bearing Alabama license LEADFT. This vehicle, a red 2003 Chevrolet C 1500, was registered to Clifton JOHNSON from Clanton, Alabama. At approximately 8:30 AM, Agents observed this vehicle arrive at 2215 Drexel Street, Detroit, Michigan (target location 1). Agents observed JOHNSON and CRAIG exit the Chevrolet Truck and meet an individual that fit the physical description of PEGUES outside of the residence. Agents observed JOHNSON, CRAIG, and PEGUES enter the westside of target location 1.

11. At approximately 4:47 PM, Agents observed JOHNSON, CRAIG, and PEGUES exit target location 1 and enter the Red Chevrolet Truck. Agents followed this vehicle to 21108 Southway Drive, Macomb Township, Michigan (target location 2). At approximately 5:23 PM, Agents observed this vehicle pull into the garage at target location 2 and the garage door shut. At approximately 6:19 PM, Agents observed the garage door open and the Red Chevrolet Truck exited target location 2 with JOHNSON, CRAIG, and PEGUES.

12. At approximately 6:51 PM, your Affiant observed this vehicle arrive back at target location 1. Your Affiant observed PEGUES exit the vehicle and enter target location 1. Your Affiant then observed the vehicle leave the area. Shortly after leaving target location 1, Agents followed this ;vehicle to Interstate 75 and back to Alabama. Agents believe through the intercepted conversations and the surveillance conducted that JOHNSON and CRAIG traveled to Detroit, Michigan to meet PEGUES at target location 1 and target location 2 to obtain drug-related proceeds to further their drug trafficking.

13. On August 28, 2005, Agents in MDO intercepted a telephone call from

JOHNSON to PEGUES. During the call JOHNSON tells PEGUES that JOHNSON wanted to thank PEGUES for "everything". Agents believe that JOHNSON is thanking PEGUES for the money that PEGUES paid JOHNSON and CRAIG for their part in transporting illegal drugs and illegal drug proceeds for PEGUES. This is based on the intercepted calls prior to JOHNSON and CRAIG traveling to Detroit to meet PEGUES and surveillance observed by Agents following JOHNSON and CRAIG to target location 1 and JOHNSON, CRAIG and PEGUES to target location 2. Agents believe that while JOHNSON and CRAIG were at target location 1 and target location 2, PEGUES gave JOHNSON and CRAIG drug-related proceeds. JOHNSON further stated, "You really got your shit together up there." Agents believe that JOHNSON was telling PEGUES that JOHNSON was impressed with the success PEGUES has had marketing the illegal drugs.

14. On August 28, 2005, Agents in MOO intercepted a telephone call from JOHNSON to Demetria MILLS. During this conversation JOHNSON tells MILLS that "D" told JOHNSON that "after all that shit went down", PEGUES is still "sitting" on six million dollars. Agents believe the when JOHNSON says, "after all that shit went down" JOHNSON is referring to the July 12,2005 seizure of 1.9 Million dollars in Los Angeles, CA. According to TFA Mims, this seizure was directly linked to JOHNSON. Further, Agents believe the six million dollars that PEGUES is "sitting on" is drug proceeds. Agents know through prior intercepted call that when JOHNSON refers 'to "O", JOHNSON is referring to Demetrious PEGUES,

15. On February 2,2002, PEGUES was arrested by Louisiana State Police Trooper Casey Williams after a traffic stop led to the discovery of approximately five (5) kilograms of cocaine and twenty-six (26) pounds of marijuana. PEGUES was arrested on state charges that were dismissed to allow for federal prosecution.

16. On July 29, 2002, PEGUES was arrested by Texas Highway Patrol Sergeant

James Holland after a traffic stop in Texas led to the discovery of approximately five (5) kilograms of cocaine and 200 grams of crack cocaine. PEGUES \vas indicted in Federal Court and a Fugitive Warrant was issued.

17. On August 29, 2005, Your Affiant performed a criminal history check on PEGUES and learned that PEGUES (AKA/ Derrick BELLMAN, AKA/James Terrell HOLLAND, *AKA!* Demeterious HOLLAND, AKA/Darryl Young MEACHEY, AKA/Terrell BANKS) is a fugitive wanted in the July 29, 2002 seizure of five (5) kilograms of cocaine in Texas. PEGUES was arrested in December of 1988 in Detroit, Michigan for Felony Kidnapping. PEGUES was found guilty and sentenced to four (4) years in prison. On October 26, 1993, PEGUES was arrested in Royal Oak, Michigan for a traffic offense and pled guilty and received a $500 fine. On August 5, 1998, PEGUES was arrested in Detroit, Michigan for Felony Delivery of a Controlled Substance. The charges were dismissed in this case.

18. According to an intelligence database, the property located at 2215 Drexel Street, Detroit, Michigan (target location 1) was purchased by Patricia HOLLAND on January 7, 2004. Information received by TFA Mims from intercepted conversations and information received from a DEA intelligence database revealed that Patricia HOLLAND is the mother of PEGUES.

19. According to an intelligence database, the property located at 21108 Southway Drive, Macomb Township, Michigan (target location 2) is owned by Lanay HARRIS. Information received by TF A Mims from intercepted conversations revealed that HARRIS is the wife of PEGUES. According to the Michigan Secretary of State, PEGUES lists his residence at 21108 Southway Drive, Macomb Township, Michigan.

20. On September 1, 2005, your Affiant learned through TF A Mims that PEGUES turned himself in to authorities in Chambers County, Texas in reference to the

fugitive \varrant. Information received from intercepted phone conversations after PEGUES turned himself in to authorities in Texas, revealed that CRAIG was contacting HOLLAND and HARRIS about obtaining dmg-related proceeds that were owed to JOHNSON and CRAIG.

21. On September 27, 2005, the MDO Agents intercepted a phone conversation between JOHNSON and CRAIG. During this conversation, JOHNSON and CRAIG talk about PEGUES being arrested in Texas and talk about contacting HOLLAND (identified as Patricia HOLLAND) or PEGUES'S wife (identified as Lanay HARRIS) about contacting Demetrious PEGUES. Agents believe based on other intercepted conversations that JOHNSON and CRAIG are aware that if they contact PEGUES'S wife, she has access to PEGUES'S money and can pay them. During this conversation, CRAIG stated that as much money as PEGUES has he should be able to get out of the charges. JOHNSON stated, "I believe he will get out of it. She gonna have to spend some money to get him out of it but I believe she'll get him out of it." In this conversation JOHNSON when JOHNSON refers to "HE", Agents believe that JOHNSON is referring to Demetrious PEGUES and if HOLLAND or HARRIS spend some of the dmg-related proceeds they may be able to get PEGUES out of jail.

22. On October 4, 2005, the MDO Agents intercepted phone conversation between JOHNSON and CRAIG. During this conversation, JOHNSON asks to speak with CRAIG, but CRlAIG'S wife Mary say CRAIG is not around. During this conversation, JOHNSON and Mary discuss them (JOHNSON and CRAIG) waiting on a call from HOLLAND. JOHNSON states, "We are the ones that did all the work and they are up there sitting on their asses." Agents believe that when JOHNSON says that "they" are sitting up there, JOHNSON is referring to HOLLAND and HARRIS, who now are living off the profits of the narcotics organization. JOHNSON also states, "If it wasn't for us, he wouldn't be where he is at today." Agents believe that JOHNSON is referring to PEGUES being a wealthy person as a result of the profits from the narcotic and dmg proceeds that

CRAIG and JOHNSON transported and sold for PEGUES. During this conversation, JOHNSON and Mary agree that HOLLAND and HARRlS are "set for life".

23. The Affiant believes, based on all of the evidence and his training and experience, that Demetrious PEGUES received a large amount of drug proceeds from an ongoing drug trafficking operation of several year duration, which he retains at 2215 Drexel Street, Detroit, Michigan and 21108 Southway Drive, Macomb, J'vlichigan. Further, your Affiant believes that PEGUES is likely to have retained records of assets purchases, travel, financial transactions, money laundering activities, contact information for other drug traffickers and money launderers, as well as other records, for several years, especially in view of his current incarceration.

24. On October 7, 2005, your Affiant performed a criminal history check on Lanay HARRIS, which revealed that on September 15, 1988, HARRIS was arrested **in** Battle Creek, Michigan for Felony Possession of a Controlled Substance and Felony Weapons Possession. HARRIS pled guilty and was sentenced to sixteen (16) months in prison. A check with the Michigan Secretary of State revealed that HARRIS has a 2006 Land Rover, a 2006 Mercedes Benz, a 2003 Hummer, and a 2002 Dodge Stratus registered in her name at target location 2. A check with public intelligence databases, information received by TF A Mims and surveillance conducted by your Affiant, revealed no employment history that is consistence with the luxury vehicles registered to HARRIS.

25. Based upon the above mentioned facts, your Affiant has probable cause to believe that there exits evidence of drug distribution at the following residence: 2215 Drexel Street, Detroit, Michigan (target location 1) and 21108 Southway Drive, Macomb Township, Michigan (target location 2). Among the elements that comprise the probable cause include (1) corroborating information form three (3) confidential sources pertaining to illegal drug activities by Demetrious PEGUES. (2) PEGUES'S presence during a traffic stop on July 29, 2002 in Texas, in which

five (5) kilograms of cocaine were seized. (3) The intercepted phone conversations between Clifton JOHNSON and PEGUES discussing drug trafficking and money laundering. (4) the surveillance by Agents involving JOHNSON and CRAIG traveling to Detroit, Michigan to meet PEGUES at target location 1 and target location 2 to obtain drug-related proceeds. (5) The intercepted conversations between JOHNSON and CRAIG in reference to CRAIG and Patricia HOLLAND discussing the release of drug-related proceeds and discussing the continuation of the drug organization. (6) The utilization of high-end, expensive vehicles by Lanay HARRIS, despite a lack of clear indications that HARRIS has a legitimate income. Based on these sources of evidence, your Affiant believes that Demetrious PEGUES is currently storing records, currency, evidence of assets obtained with drug proceeds, and other evidence on each of these locations.

26. Based upon the foregoing, your Affiant has probable cause to believe that target location 1 and target location 2 will contain evidence of violations of 21 U.S.c. sec. 846 and 841 (a) (1).

Agent B Drug Nan Malagrida   Special
Enforcement Administration

Sworn to and subscribed before me
this 27th day of October, 2005.

Honorable R. Steven Whalen
United States Magistrate Judge